UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CRIMINAL NO: 18-20071

v.

                              HONORABLE Stephen J. Murphy, III

D-1    LERON LIGGINS,

        Defendant.
_____/

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO REVOKE ORDER OF PRETRIAL DETENTION (R. 22)

After detailed consideration of the factors set forth in 18 U.S.C. § 3142(g), the Honorable Antony P. Patti detained Defendant Liggins finding him to be a danger to the community. (R. 15: Order of Detention). The facts proffered by the government at the detention hearing prompted the court to find that there were no conditions that could reasonably assure the safety of the public if the defendant was released on bond. Magistrate Judge Patti's examination of the factors set forth in 18 U.S.C. § 3142(g) mandated a finding of detention, an order which should be continued.

## FACTS

On December 3, 2015, a female attempted to transport heroin on Liggins's behalf from Detroit to Phoenix, Arizona. Officers investigated the female. After a

drug detection dog positively indicated her checked luggage could contain drugs officers searched it. Officers seized more than 300 grams of heroin, wrapped in cellophane, hidden amongst towels.

 

*Drugs as packaged*          *Heroin tested from seizure*

The female courier was in regular contact with Liggins and spoke with him over the phone before and after her arrest. Officers recorded some of the calls after her arrest, during which Liggins instructed the courier to get a new phone number and delete all social media. Liggins expressed concern about "being recorded" and "in the same boat" with the courier who may have "got caught with shit," but that law enforcement could have all his information. He also informed the courier "we got a lawyer". The "we" was presumably a reference to Luz Jiminez a/k/a "Chata"[1] who along with Liggins, spoke with the courier following her arrest.

---

[1] Jiminez is charged separately with conspiracy to launder monetary instruments in EDMI. *See* R. 110: Third Superseding Indictment 18-cr-20323.

Law enforcement did have Liggins's information. His phone number, one of two he used to speak to the courier the day of her arrest, was listed on the courier's flight reservation. Liggins's mother paid for the phone, which was subscribed to Liggins's sister at an address Liggins reported as his own to PreTrial Services.

Liggins flew extensively across country. Liggins flew on a monthly basis, often times several times a month, regularly to Phoenix, Arizona and Los Angeles (cities known to source narcotics) since approximately June of 2015 until he was arrested on December 28, 2016 at the Louisville, Kentucky airport with 700 grams of tramadol, a Schedule IV controlled substance commonly used as a cutting agent[2]. On December 13, 2016, only 15 days before his arrest in Kentucky, Liggins was arrested and released at Jiminez's home in Phoenix where law enforcement executed a search warrant. Law enforcement seized 11 firearms and almost 10 kilograms of marijuana. While Liggins was not charged in relation to those seizures, law enforcement has reliable information that otherwise connects Liggins to some of the firearms and drugs seized. One of the individuals who was charged in relation to those seizures was Jesus Leon, Jiminez's son, and someone Liggins previously flew with between LA and Phoenix in July 2016.

After Liggins was released on bond in his Kentucky case, he took

---

[2] This case has been transferred to EDMI for Liggins to enter a guilty plea. See 18-cr-20182.

affirmative steps to determine whether he might be charged in the instant case and who might be a witness against him by reaching out to the female courier over social media. He indicated he looked her case up on PACER and asked her to meet him in person and turn over discovery in her case because as Liggins put it "U see all of that n y u not in jail bro so u working wit the police I'm just tryna figure this out". While Liggins did not overtly threaten anyone in these messages, they at a minimum raise concerns about witness intimidation and tampering, one that Magistrate Judge Patti took seriously (R. 24: Transcript, 103-104).

## ARGUMENT

### Standard of Review

The Court reviews a magistrate judge's order of detention de novo. *United States v. Montgomery*, No. 09-20101, 2010 WL 1052339 (E.D. Mich. Mar. 19, 2010) (Cox. J.); *United States v. Koubriti*, No. 01-80778, 2001 WL 1525270, at *5 (E.D. Mich. Oct. 16, 2001) (Rosen, J.) (noting that although the Sixth Circuit has not addressed the appropriate standard of review, district courts within the Sixth Circuit hand sister circuits apply a standard of de novo review).

### Presumption of Detention

Given the amount of heroin seized, the decision regarding detention should start with the presumption that there is no set of conditions that can reasonably assure the safety of the community. 18 U.S.C. § 3142(e)(3)(A). Magistrate Judge Patti

found the defense failed to introduce sufficient evidence to rebut the presumption (R. 15: Order of Detention, 29). Even if this Court were to find that Defendant rebutted the presumption, the government is able to meet its burden of persuasion.

18 U.S.C. § 3142(g) Factors

The Court is to consider the following factors when determining if the government has met it burden of persuasion:

Nature and Circumstances of the Offense: 18 U.S.C. § 3142(g)(1)

On October 22, 2015, only 45 days prior to the seizure of heroin in this case, Liggins sent almost $37,000 in cash wrapped in towels in checked luggage from Detroit to Phoenix, using the "check and miss method", where Liggins checked the luggage in his name, but missed his flight. Liggins flew into Phoenix the following day on a separate airline. Initially Liggins admitted the luggage was his, but denied knowledge of the money, only to call police later the same day to try to claim the money. Liggins sent the money as a partial drug payment for Luz Jiminez who picked it up off the carousel at the airport before abandoning it out of concern that she was being watched. Despite the seizure of money 45 days before, Liggins was undeterred and had the courier transport the more than 300 grams of heroin in this case on his behalf to Arizona. And law enforcement knows that was not the first time Liggins had the courier transport contraband on his behalf. Two weeks before her arrest the courier and Liggins met in Los Angeles where she brought him

narcotics proceeds.

Officers seized Liggins's cell phone when he was arrested in February 2018 for this offense. Numerous photos and videos from his phone show his penchant for firearms despite the fact that he is a convicted felon and the glorification of drug trafficking displaying what is conceivably narcotics proceeds broken down and rubber banded in stacks. This money is certainly not from sporadic electrical work when he assists his father.



*Video dated November 2, 2017*
*(press play buttom bottom left of image to activate)*

 

*Images dated November 2, 2017*

Weight of the Evidence: 18 U.S.C. § 3142(g)(2)

"Section 3142(g)(2) considers weight of the evidence of dangerousness, not the weight of the evidence of defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). The type of drugs and quantity alone are indicative of the danger the defendant poses to the community. As Magistrate Judge Patti indicated, Liggins's criminal history, discussed below, cannot be overlooked and weighs in favor of detention (*Id.*, 102-103).

History and Characteristics of the Person: 18 U.S.C. § 3142(g)(3)

Liggins's criminal history is extensive and violent, despite what he reported to the Probation Department as a normal upbringing, one that he attempts to rely heavily on in his motion to revoke the order of detention.

In September 2005, Liggins was convicted of Assault and Battery and

placed on two years' probation pursuant to Holmes Youthful Trainee Act (HYTA). The underlying facts of the assault and battery are troubling. Liggins was with another individual who fired shots at a high school. Liggins punched and kicked the victim and held him down while he was pistol whipped.

 Liggins was arrested in March 2008 for Carrying a Concealed Weapon after security at Sinai Grace Hospital approached him and Jerome Terrell[3] as they went through the parking structure checking handles of parked cars. The .22 caliber firearm Liggins concealed was loaded. Liggins pleaded guilty to the offense on April 18, 2008, and remained on bond. Hours later, just after midnight on April 19, 2008, armed with another firearm, Liggins used a sawed off shotgun to rob a McDonalds. The facts are frightening. Liggins pointed the shogun at a minimum of four employees. Liggins jabbed the shotgun into the hip of one employee and demanded "turn your ass around and getting your fucking manager". While wearing a ski mask to try to conceal his identity he ordered another employee to "get your ass on the floor and don't look up". Liggins ultimately pointed the shotgun at the chest of the manager and directed her to open the safe, which he rifled through while holding her at gunpoint. Liggins fled as officers arrived and he did not merely resist, he refused to surrender. Liggins is large, he is tall and heavy

---

[3] Terrell is charged separately with drug and money laundering conspiracy and firearms offenses in EDMI. *See* R. 128: Third Superseding Indictment17-cr-20053.

set. He refused to allow officers to handcuff him. Multiple officers struck him unsuccessfully and Liggins only put his hands behind him when a police dog bit him on the face. Liggins was sentenced to five to 15 years in the Michigan Department of Corrections.

While he was incarcerated Liggins accumulated 15 misconducts, including disobeying a direct order, insolence, and assault and battery on another prisoner. Liggins was paroled in October 2013, and discharged from parole on October 3, 2015. Less than 20 days later, Liggins sent the cash filled luggage to Jiminez. Within 45 days, officers made the instant seizure of heroin.

Liggins has not been the productive member of society the letters of support convey. While Liggins may have worked intermittently for his father, he has not maintained consistent stable employment as an adult. Despite that, he had the financial ability to fly cross-country consistently since he was discharged from parole until he was arrested.

## No Conditions of Bond Can Be Set to Address the Concerns of the Safety of the Community

Liggins has proven he is violent; that despite being a convicted felon he still possesses firearms in blatant violation of the law; that conditions of bond have proven meaningless in the past; that he will not be deterred from continued criminal activity; that his chief concern is avoiding culpability by determining who may be cooperating with the government. Magistrate Judge Patti considering all

the factors and options for bond and correctly determined no conditions could be set that could ensure the safety of the community. That decision should be continued.

## CONCLUSION

For all of the above stated reasons Defendant's motion should be denied.

Respectfully Submitted,

Matthew Schneider
United States Attorney

s/ *Andrea Hutting*
Andrea Hutting
Assistant United States Attorney
211 W. Fort St. Suite 2001
Detroit, MI 48226
313-226-9110 phone
andrea.hutting@usdoj.gov

Dated: December 21, 2018

CERTIFICATE OF SERVICE

I hereby certify that on Friday, December 21, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Marlon Blake Evans

                                          s/Andrea Hutting
                                          Andrea Hutting
                                          Assistant U.S. Attorney
                                          211 W. Fort Street, Suite 2001
                                          Detroit, MI 48226
                                          313-226-9110 phone