UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                  CRIMINAL NO: 18-20071

v.

                                 HONORABLE Stephen J. Murphy, III

D-1    LERON LIGGINS,

        Defendant.
_____/

## GOVERNMENT'S AMENDED RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO REVOKE ORDER OF PRETRIAL DETENTION (R. 62)

Liggins is detained pending trial for heroin trafficking, and this is a presumption case. The instant motion marks Liggins' third stab at pretrial release. The magistrate judge ordered Liggins detained in the first instance, following a robust detention hearing. When Liggins appealed, this Court continued his detention. (R. 29). Now Liggins is back, claiming that generalized concerns about the coronavirus (COVID-19) overcome his dangerousness and risk of nonappearance. Liggins has not identified any specific personal factors that would place him at higher risk of severe illness from COVID-19. Instead, Liggins seeks release because he is in jail and claims to be more susceptible to contracting COVID-19. But the Livingston County jail where Liggins is detained has taken

precautions to protect the health and safety of inmates. Liggins does not assert any other changes in facts or circumstances that pertain to the factors of the Bail Reform Act, which support continued detention. The Court should deny his motion.

## I.     Facts

The government previously provided a detailed recitation of the facts of the case and arguments in favor of detention its initial response in opposition to Liggins's motion to revoke the order of detention, which is incorporated by reference. (R. 25).  A summary of the key facts is provided here.

Liggins trafficked drugs while on parole for an armed robbery. And only 19 days after he was discharged from parole, Liggins sent more than $37,000 in drug proceeds in his checked luggage to Arizona and intentionally missed his flight, a common technique employed by drug traffickers known as "check and miss." When Liggins arrived the next day he tried to claim his luggage and lied to officers, denying that he knew about all the cash. But later the same day, he boldly called the officers, admitted the cash was his, and he wanted it back.

Only 45 days later, in December 2015, Liggins directed a female courier to transport more than 300 grams of heroin from Detroit to Arizona on his behalf. When she was caught, Liggins was unwittingly intercepted on recordings telling her that he would get her a lawyer, directing to her to get a new phone, and

admitting he was in the same boat with her even if she was the one caught with the drugs.

But the seizures did not deter Liggins. On December 13, 2016, Liggins was at a home in Arizona where officers seized 11 firearms and almost 10 kilograms of marijuana. Liggins was not charged in relation to those seizures, but law enforcement has reliable information that otherwise connects Liggins to some of the firearms and drugs seized. Only fifteen days later, Liggins was arrested with 700 grams of what was initially believed to be cocaine, but ultimately turned out to be tramadol, a Schedule IV controlled substance and common cutting agent for cocaine. This case is pending in the Western District of Kentucky.

While on pretrial release for the Kentucky case, Liggins intimidated the female courier and took affirmative steps to determine if she was cooperating with the government in this District, pressuring her to meet him and show him her discovery and questioning "y u not in jail bro so u working wit the police I'm just tryna figure this out." While Liggins did not overtly threaten anyone, his attempts to intimidate and tamper with a potential witness are troubling and exemplify his unwillingness to follow bond conditions. As the magistrate judge noted, "[it was] particularly concern[ing] to hear the exact wording of [the]…message which specifically inquired about whether a person is cooperating with law enforcement. I cannot infer good things from that question, quite frankly, and I'm concerned

about that." (R. 24: Detention Hearing Transcript, 103-104). Those concerns are only more heightened now that the government provided *Jencks* material and a witness list in anticipation of trial in September 2019, which listed more than one cooperating witness.

Liggins glorifies his illegal drug trafficking and despite being a felon has a penchant for illegally possessing firearms. Evidence on Liggins's cell phone included images of him boastfully displaying drug money and video of him on November 2, 2017, in possession of a shotgun bragging he was "riding around with [his] choppa…never trip" even though he is a convicted felon. *See* R. 25: Gov. Response, 114[1]).




Images dated November 2, 2017

---

[1] The Government attempted to imbed the video directly into this response, but due to network connection issues working from home was unable.

4

After the Court previously denied Liggins's request for release the government had an opportunity to further review Liggins's phones and found additional evidence of drug trafficking and gun possession. Below is a mere sample of just some of the evidence.

Many of Liggins's messages referenced counting drug proceeds.



Image Liggins sent in a text on September 26, 2017, captioned "counting"



Image Liggins sent in a text on January 24, 2018, captioned "cuttin' up today"



Image Liggins posted to social media

Liggins also had a multitude of images of firearms and messages about purchasing guns.



In a text exchange on January 4, 2018, Liggins asked how much this gun cost and stated "I need .40s," in reference to the caliber he wanted to purchase.



In January 2018 Liggins inquired of this shotgun, "How much?"



Liggins then sent this image to contact "Whoop," on January 19, 2018, who asked if it was new. Liggins replied "yep."

On January 24, 2018, Liggins admitted to contact "Blondie," that he just purchased three guns



7



Undated image of Liggins with a handgun in his lap.

Liggins even shared a copy the female courier's indictment with someone, the same contact he also discussed buying a .40, Glock 9 and Beretta 9 with on October 21, 2017. Liggins also underscored the seriousness of his Kentucky case in text messages, telling others "[c]aught a Fed case," but that he was only "gonna get probation."

In addition to the drug money, guns and discussion about his pending federal cases Liggins had extensive exchanges about continued drug trafficking, people flying on his behalf, and his source of supply – the "plug" needing to be paid.

## II. Argument

### A. The Bail Reform Act factors favor detention

<u>Presumption of Detention 18 U.S.C. § 3142(e)(3)(A)</u>

Liggins is charged with conspiracy to distribute and aiding and abetting possession with intent to distribute more than 100 grams of heroin. (R. 42: First Superseding Indictment). Based on the statutory maximum penalties Liggins is presumed to be a flight risk and a danger to the community. Both the magistrate judge and this Court found Liggins previously failed to even rebut the presumption that favors detention. (R. 15: Order of Detention, 29; R. 29: Order Denying Motion for Revocation of Detention, 144). The basis of his renewed motion, a desire to be released because of the spread of COVID-19 still does not rebut the presumption. Liggins should remain detained.

<u>18 U.S.C. § 3142(g) Factors</u>

When the magistrate judge ordered Liggins be detained pending trial, he focused on several statutory factors, including his prior felony convictions involving weapons or violence; his commission of offenses while on bond or immediately after discharge from court supervision; and evidence that he is undeterred by court imposed conditions of release or prior punishment, all of which this Court reiterated when it denied Liggins's motion to revoke the detention order. (R. 15, 30; R. 29, 143).

9

Liggins's criminal history is extensive and violent. In his teens he assaulted a high school student, kicking him and holding the victim down when he was pistol whipped. Liggins was caught with a handgun while trying to break into cars. He pleaded guilty to carrying a concealed weapon and later the *same day* robbed a McDonalds and threatened multiple employees with a sawed off shotgun, including jabbing it into the hip of one victim demanding they "turn your ass around and get your fucking manager." He resisted and fought the police who arrested him. While Liggins was in prison with the Michigan Department of Corrections he was cited for misconduct 15 times.

The magistrate judge specifically noted "when [Liggins was] released…[he] immediately went back to criminal conduct." (R. 24: Detention Transcript, 102). Less than 20 days after he was discharged from parole, Liggins shipped $37,000 in drug proceeds to Arizona. Liggins then directed the female courier to transport the heroin for him that is the subject of the instant case. He then got caught with cutting agent for cocaine a year later.

And the images and messages on Liggins's phone are a clear depiction of the weight of the evidence of the danger he poses. 18 U.S.C. § 3142(g)(2) and (4).

Liggins is violent. Liggins commits crimes on bond. Liggins trafficked drugs while on parole. Liggins tried to intimidate a potential witness. Since his first assault and battery offense as a teenager, he has resided with his parents. Returning

10

to their home, even under house arrest and location monitoring would not ensure the safety of the community. It never has when he was under their roof.

**B.      COVID-19 conditions do not constitute grounds for Liggins's release**

This Court previously ruled there were "no grounds on which to second guess the well-reasoned conclusions of the magistrate judge" who ordered Liggins detained pending trial. (R. 29: Order, 144). That remains the case. This Court has noted that Liggins is manipulative. He is on his third attorney. His Kentucky case was transferred to this district because he said he intended to plead guilty. He did not and that case has been returned to the original district. Liggins claimed he intended to plead guilty in this case and then refused. And now Liggins attempts to use the COVID-19 pandemic as a convenient rationale for release. But Liggins does not proffer any new information that is material to the issue before the Court – the danger Liggins continues to pose to the community.

Instead, his motion is a boilerplate filing that only outlines generalized concerns about the impact of the COVID-19 pandemic currently affecting Michigan and the United States. Liggins's request for release is based solely on the speculative possibility that he might at some point contract COVID-19 because he is in a jail. Such speculation does not rebut the presumption of detention, let alone overcome the Court's previous ruling regarding the analysis of the detention factors under the Bail Reform Act. *See* Gov. Ex. 1: March 26, 2020, Letter from

11

U.S. Attorney Schneider).

Liggins did not identify any specific personal factors that would place him at higher risk of severe illness from COVID-19. To the contrary, when Liggins was previously interviewed by the Probation Department[2] he reported no chronic illnesses or medical conditions requiring treatment. (Presentence Investigation Report (PSR) ¶ 68). Liggins is currently housed at the Livingston County jail. As of April 2, 2020, Livingston had no known cases of COVID-19, all inmates were asymptomatic, and all new arrivals are quarantined for 14 days. In addition, jail officials have instituted a number of other precautionary measures to mitigate virus risks, including[3]:

- *Limit Detainees Entering the Facility*. The jail taken steps to reduce the number of new detainees entering the jail: new detainees are limited primarily to new local arrests for felonies and serious misdemeanors (*e.g.*, domestic violence).

- *Visitation*. The jail has canceled all in-person visits, both social and attorney,. All social and attorney visits are currently being conducted by video.

- *Sanitation*. Extra cleaning is being done inside the jail, including continuous wiping down of surfaces. Detainee cells are cleaned on a daily basis.

---

[2] At Liggins's request, the Court previously ordered the Probation Department conduct a presentence investigation report in anticipation of a plea.

[3] Information regarding the current precautionary measures at Livingston County Jail was provided on March 30, 2020, by Lieutenant Jeffery LeVeque of the Livingston County Sheriff's Office.

- *Correctional Officers and Staff.* Entry to the jail is currently limited to staff and essential employees. Staff has been advised that they must self-report any symptoms of infection and not report to work if they are showing symptoms.

- *Other.* Social programs for detainees have been canceled for the time being to assist with social distancing.

Liggins's motion failed to acknowledge any of these precautionary measures.

## C. Granting Defendant's Requested Relief Would Endanger the Public, Pretrial Services Officers, and Local Law Enforcement.

Releasing Liggins now would heighten the risk to others in the community. For example, if released on bond, Pretrial Services officers would have to closely supervise Liggins's compliance with bond conditions during the COVID-19 outbreak, while themselves operating under the strain of limited resources. This may require Pretrial Services officers to conduct face-to-face meetings with Liggins, or to have to forgo usual monitoring to abide by directives restricting movement to reduce the transmission of the virus. *See* Executive Order 2020-21, "Stay Home, Stay Safe" (requiring people to shelter in place, effective at midnight March 24, 2020, for the next three weeks), www.michigan.gov/coronravirus. These are unprecedented circumstances that severely limit, if not prevent, Pretrial Services from monitoring additional defendants to their current cases, which is approximately 40-60 per officer. It is unclear how a tether could even be installed. Given Liggins's

13

history, release under any conditions would likely result in violations, putting Pretrial Services officers at greater risk due to the need to respond to these violations.

Liggins's release would also pose an unacceptable risk to the public, including his elderly parents, who have been unsuccessful at controlling their son to date, and are not adequate third party custodians. As this Court has previously found, Liggins has a poor record of law abidance. It seems unlikely that he would follow the State's guidance on social-distancing. If he is released into the community and violates the terms of his bond, he would then pose a risk of bringing the virus back into a custodial facility with him.

Finally, the community is currently demanding much of law enforcement. *See, e.g.*, https://www.fox2detroit.com/news/duggan-25-detroit-officers-test-positive-healthy-officers-working-double-shifts (describing that, as of March 26, 2020, 25 DPD officers have tested positive for COVID-19 and 398 remain in quarantine). There is an additional risk to public safety from releasing dangerous defendants while first responders are already stretched thin due to quarantine and illness, including at least 10 percent of the Detroit Police Department. Given his history, release under any conditions would likely result in unnecessary danger to the community and further strain on local law enforcement. The speculative prospect of a COVID-19 outbreak at Livingston County Jail does not diminish the public interest in keeping dangerous offenders off the streets.

Other Judges in this district have acknowledged the seriousness of the COVID-19 pandemic, but denied similar requests for release based on generalized concerns. *See United States v. Harris*, 19-30382 (E.D. Mich. Apr. 2, 2020) (Cox, J.); *United States v. Johnson*, 2020 WL 1474397 (E.D. Mich. Mar. 26, 2020); United States v. Wilson, 2020 WL 1543547 (E.D. Mich. Mar. 26, 2020); *United States v. Woods*, 2020 WL 1493488 (E.D. Mich. Mar. 28, 2020); *United States v. Lee*, 2020 WL 1540207 (E.D. Mich. Mar. 30, 2020) *United States v. Bell*, 2020 WL 1650330 (E.D. Mich. Apr. 3, 2020).

**D.      Request for a hearing**

If the Court is not inclined to deny Liggins's motion on the briefs, the government respectfully requests this Court hold a hearing and include the call-in phone number and access code in the docket entry and on the court's public website to ensure public access.

If the Court intends to order Liggins's release without a hearing, the government requests that the Court notify the parties sufficiently in advance for the government to determine whether it will seek an emergency stay pending a possible appeal to the Sixth Circuit.

### III. Conclusion

For all of the above stated reasons Defendant's motion should be denied.

                                  Respectfully Submitted,

                                  Matthew Schneider
                                  United States Attorney

                                  s/ *Andrea Hutting*
                                  Andrea Hutting
                                  Assistant United States Attorney
                                  211 W. Fort St. Suite 2001
                                  Detroit, MI 48226
                                  313-226-9110 phone
                                  andrea.hutting@usdoj.gov

Dated: April 6, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on Monday April 6, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John W. Brusstar

s/*Andrea Hutting*
Andrea Hutting
Assistant United States Attorney
