UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,                      Case No. 18-20071

v.                                       Honorable Stephen J. Murphy, III

Leron Liggins,

        Defendant.

## Government's Sentencing Memorandum

Almost as soon as Leron Liggins was released from parole after serving a substantial prison sentence for a violent armed robbery, he was conspiring to distribute drugs. The same month Liggins's parole was terminated he sent almost $37,000 – a drug debt – in his checked luggage to Arizona. Liggins regularly used other people to fly drugs and proceeds across the country. A month and a half after law enforcement seized Liggins's money, one of his couriers was arrested in December 2015 in Detroit trying to return part of a kilogram of heroin Liggins did not want to pay for. And despite drug and money seizures, Liggins was not deterred. Liggins's cell phones and iCloud were rife with evidence of his ongoing drug trafficking. Not only that, but as a convicted felon, Liggins's phones had pictures and videos of him with multiple firearms and text messages about purchasing guns.

A jury found Liggins guilty of conspiring to possess with intent to distribute and to distribute heroin and aiding and abetting his courier's possession with intent to distribute heroin. (ECF No. 101). The verdict only accounted for 100 grams or more of heroin, but that amount was just a fraction of the heroin Liggins conspired to distribute.

The Court must sentence Liggins to at least five years in prison, but his conduct requires much more. The Probation Department calculated a guideline range of 121-151 months. (PSR ¶ 75). The Court should sentence Liggins to at least 136 months.

## I. Facts

In less than 18 months, law enforcement at airports across the United States seized Liggins's drugs and proceeds. First, on October 22, 2015, officers at the Phoenix, Arizona airport seized almost $37,000 in Liggins's luggage. (*Id*. ¶¶ 16-19).



---

[1] Trial Exhibit 19

Liggins "checked and missed," (when an individual checks their luggage with contraband but does not board the flight to have plausible deniability if there is a seizure) a technique he utilized, and text messaged about with his co-conspirators:



[2]

On December 3, 2015, Liggins had Dehaven Murphy bring almost half a kilogram of heroin to him in Arizona that he wanted to return to his source of supply. But officers seized the heroin in Detroit before Murphy departed. (*Id.* ¶¶ 12-13).



[3]

Liggins was caught on recorded calls making admissions and directed Murphy to get a new phone number, delete her social media, and wait until he got

---

[2] Trial Exhibit 60
[3] Trial Exhibit 8

her a lawyer. Instead, he left her high and dry and later tried to find out if she was "working wit[h] the police[4]" when he messaged her on Instagram.

But that was not the first time Murphy flew for Liggins. The month prior she flew to California to deliver cash to Liggins. In return, Liggins paid her. Murphy was not the only person Liggins paid or recruited to fly across the country to transport his drugs and money. (*Id.* ¶ 14). It was apparent from his texts (some examples below) she was just one of many.



---

[4] Trial Exhibit 14
[5] Trial Exhibit 57
[6] Trial Exhibit 62
[7] Trial Exhibit 63

Liggins consistently messaged about couriers' travel, particularly with his apparent co-conspirator "Jeo," providing their information to book tickets and sending pictures of luggage they used to smuggle drugs and money. Liggins also discussed collecting money from his distributors who were selling the drugs in Detroit[8]:



---

[8] Trial Exhibit 60

Then, on December 28, 2016, TSA officials at the Louisville, Kentucky airport seized almost a full kilogram of what they initially thought was cocaine in Liggins's luggage, but turned out to be tramadol, a Schedule IV controlled substance commonly used as a cutting agent. (*Id*. ¶ 49).



Based on some of Liggins's flight records dating back to 2015[10] and his text messages, Louisville was one of Liggins's distribution cities he frequented.



Ultimately, the three seizures represented a mere fraction of the drugs Liggins conspired to distribute.

---

[9] Trial Exhibit 22
[10] See Trial Exhibit 70 Flight Summary Chart

## II. Consideration of 18 U.S.C. § 3553(a) Sentencing Factors

In imposing a sentence, the Court should consider the sentencing factors when determining what is sufficient, but not greater than necessary to achieve the statutory objectives. *United States v. Vowell*, 516 F. 3d 503 (6th Cir. 2008).

**3553(a)(4): the sentencing guideline range**

The Court should not vary from the guidelines or sentence Liggins to merely the bottom because the range in this case only accounts for a fraction of Liggins's illegal activity. The base offense level of 28 includes a relatively small amount of drugs seized on two occasions, and minimal drug proceeds. (PSR ¶¶ 23, 29). But it is apparent from Liggins's text messages and iCloud content that his drug trafficking was far more extensive.

The Court is required to sentence Liggins to at least five years in prison but based on his conduct he is deserving of much more. Liggins's sentence could have been enhanced pursuant to 21 U.S.C. § 851, which would have increased his minimum sentence to at least ten years in prison. Liggins met the qualifications for enhancement: He (1) was convicted of a prior serious violent felony – armed robbery; (2) served more than one year in prison – Liggins served five years; and (3) was released within 15 years of the commission of this offense. Liggins's prior violent felony that could have enhanced his sentence is all the more reason the Court should not vary from the guidelines or sentence Liggins to the bottom.

**3553(a)(1): the nature and circumstances of the offense**

Liggins might not be the most sophisticated drug trafficker this Court has sentenced, but he held a leadership role in an on-going conspiracy. Liggins was not a street dealer. He supplied kilograms to larger distributors who reported to him. Liggins recruited people to act as couriers for him. He frequently traveled across the country to various source states like Arizona and California, and others where he was responsible for overseeing the distribution of drugs, including Colorado and Kentucky, not just Michigan.

**3553(a)(1): history and characteristics of the defendant**

Liggins's criminal history is extensive and violent. He committed crimes on bond. He trafficked drugs while on parole. And he even tried to intimidate a potential witness in this case.

Since he was a teenager Liggins has posed a serious danger to the community. When he was 17 years old, he was a part of a violent, armed assault at a school. Liggins held a victim down preventing him from getting away while his cohorts beat the student up, whipping him in the face with a pistol. Liggins was sentenced to probation under HTYA, giving him the opportunity to reform his behavior without a conviction on his record. (PSR ¶¶ 42-43). Liggins squandered the opportunity. In March 2008, Liggins was caught with a concealed pistol, seemingly looking for cars to either break into or steal, as he went around checking

the doors of vehicles parked in a hospital structure of all places. When the police arrested Liggins he gave them a fake name. (*Id*. ¶ 44).

But his criminal behavior seriously escalated *when the same day*[11], after he pleaded guilty to carrying a concealed weapon, he left the courthouse and later robbed a McDonald's. During the robbery, Liggins threatened multiple employees with a sawed-off shotgun, including jabbing the shotgun into the hip of one victim demanding he get his manager. Liggins pointed the shotgun at the manager's abdomen and wanted to know, "where's the money?" Liggins resisted and fought the police who arrested him. During the five years Liggins was in prison for the armed robbery he was cited as many as 15 times for misconduct, including disobeying orders, being out of place, insolence, and even assaulting another prisoner. (*Id*. ¶ 45).

Liggins again had an opportunity to change his behavior when he was released from prison. Instead, he almost immediately returned to criminal activity. Less than 20 days after Liggins's parole was terminated he was caught sending drug money to Arizona.

Unlike many other defendants who appear before the Court who are the product of an unstable environment, Liggins did not come from a broken home. He

---

[11] The PSR indicates the police responded to the armed robbery on April 19, 2008, but police reports show it was after midnight. The robbery occurred on April 18, 2008, the same day Liggins pleaded guilty. (PSR ¶¶ 44-45).

was not neglected. He was never subjected to abuse. Quite the opposite. He was raised by stable parents in a supportive household. (*Id*. ¶ 45). Many other defendants' poor choices and criminal involvement are fueled by their own addiction, but that is not the case for Liggins. Rather, Liggins criminal history and involvement in the instant offense appear to be motivated by arrogance and money. Despite his claim he was under the influence of Xanax at the time of the offense, Liggins has not consumed any prescription drugs since 2016 or 2017. (*Id*. ¶¶ 64-66). And based on the probation department's administration of the Texas Christian University Drug Screen V, Liggins scored a zero, suggesting there are no concerns regarding substance abuse and treatment needs. Therefore, the government objects to any recommendations for the Residential Drug Abuse Program (RDAP).

As an adult Liggins never really had legitimate, consistent, verifiable employment. He may have intermittingly worked for a family friend or his father, but it is apparent Liggins's real source of income was distributing drugs. (*Id*. ¶¶ 70-72).

**3553(a)(2)(A): the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 3553(a)(2)(B): the need for the sentence imposed to afford adequate deterrence**

These factors can be considered together. A sentence to at least the mid-point of the guidelines as requested by the government will achieve these

objectives. Drug trafficking is a serious crime; it is not victimless. Drug trafficking and any subsequent drug use play a predominant role in the degradation of our communities. Liggins directly contributed to that by recruiting couriers and overseeing distribution of kilograms into the community.

Liggins did not respect the law. He was not deterred by his prior prison sentence, money and drug seizures, nor an arrest of one of his couriers.

Liggins had images of kilograms stored in his iCloud from just days after Murphy's arrest, geotagged at two residences in Arizona, one where he previously resided with Luz Jiminez. (*Id*. ¶¶ 38-40).

 [12]

---

[12] Trial Exhibits 64 and 65 from 12/16/2015

Liggins was glib about his pending Kentucky case, telling one of his contacts that he would only get probation.



And while on bond for his Kentucky case, Liggins was so audacious as reach out to Murphy over Instagram to try to get her to meet him. Liggins wanted to review her discovery to try to determine if she was cooperating with law enforcement, gauge the evidence against him, and likely to try to convince Murphy not to cooperate:

> Bro I'm just tired of arguing wit u so where the rest of your paper work bro where's your discovery
>
> I'm fighting a fed case right now
>
> Send me yo discovery

---

[13] Trial Exhibit 55

> U see all of that n y u not in jail bro so u working wit the police I'm just tryna figure this out
>
> Ok bro so let's meet up n talk about this
>
> N we can go from there bro [14]

Liggins also glorified drug trafficking, boastfully taking pictures of proceeds, posing with stacks of drug money, or posting to social media.



[15]

---

[14] Trial Exhibit 14
[15] Trial Exhibit 41

[16]

[17]

---

[16] Trial Exhibits 42C, 42B, 42A, respectively
[17] Trial Exhibit 45A

14

The Court's sentence should account for the fact that Liggins was not deterred by his past prison sentence, law enforcements' seizures, or pending federal charges in another district, and that he did not just fail to respect the law, but blatantly disregarded it. In that same vein, Liggins is fortunate he was not also charged as being a felon in possession of a firearm[18].

**3553(a)(2)(C): the need for the sentence imposed to protect the public from further crimes of the defendant**

Drug trafficking is a dangerous crime in and of itself. But Liggins had a penchant for firearms and blatantly disregarded the law that prohibited him from possessing any as a convicted felon. Liggins had a multitude of images with firearms and messages about purchasing guns in his phones. A few examples:



---

[18] The government identified photos (and messages about) Liggins in possession of firearms but did not have location data for the images to establish venue in the Eastern District of Michigan.

Liggins, a braggart, made videos of himself "riding around with choppas and shit, never trip, always good":



Video from November 2, 2017. Press to play.

In a text exchange on January 4, 2018, Liggins asked how much this gun cost and stated, "I need .40s," in reference to the caliber he wanted to purchase:



In January 2018 Liggins inquired of this shotgun, "How much?":



Liggins sent this image to one of his contacts on January 19, 2018, who asked if it was new. Liggins replied "yep":



On January 24, 2018, Liggins admitted that he just purchased three guns:



The public needs to be protected from Liggins and his cyclical criminal behavior.

**3553(a)(6): the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

The requested sentence will achieve this objective. As a general matter, the sentencing guideline range helps guide courts in fashioning sentences that will avoid unwarranted disparities. See 18 U.S.C. § 3553(a)(6). "The Guidelines exist to help ensure that similarly-situated defendants are punished similarly." *United States v. Vassar*, 346 Fed.Appx. 17, 29 (6th Cir. 2009) (citing *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir.2006)). This provision of the guidelines is primarily aimed at national disparities, rather than those between co-defendants. *United States v. Rivera-Gonzalez*, 626 F.3d 639, 648, (1st Cir. 2010).

To vary from the guidelines would create a disparity. Liggins's role as a leader of an extensive conspiracy, his armed, violent history, his possession of multiple firearms, and the fact that the guidelines only account for three relatively small seizures rather than an estimation of all the drugs he likely distributed over the years is why the Court should not vary from the guidelines or sentence him to just the bottom.

## III. Conclusion

The Court should sentence Liggins to at least 136 months in prison.

Respectfully submitted,

Dawn N. Ison
United States Attorney

s/ Andrea Hutting
Andrea Hutting, P68606
Timothy P. McDonald
Assistant United States Attorneys
211 W. Fort St. Suite 2001
Detroit, MI 48202
313-226-9110 phone
andrea.hutting@usdoj.gov

Date: March 15, 2022

CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2022, I emailed copies of the Government's sealed exhibits and electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Martin E. Crandall

                                            s/Andrea Hutting
                                            Andrea Hutting
                                            Assistant United States Attorney
                                            211 W. Fort Street, Suite 2001
                                            Detroit, MI 48226
                                            313-226-9110 phone
                                            andrea.hutting@usdoj.gov